FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 30, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BONNIE BASEL JEAHD C.,

    Plaintiff,

    v.

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.

No.  1:19-CV-03096-RHW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER**

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 13, 14. Plaintiff brings this action seeking judicial review of the Commissioner of Social Security's final decision, which denied his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434. *See* Administrative Record (AR) at 1-6, 17-40. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

# I.    Jurisdiction

Plaintiff filed his application for disability insurance benefits on July 6, 2017, initially alleging disability beginning on March 1, 2014.[1] *See* AR 20, 213. His application was initially denied on October 12, 2017, *see* AR 131-34, and on reconsideration on March 1, 2018. *See* AR 139-145. On April 4, 2018, Plaintiff filed a request for a hearing. AR 146-47.

A hearing with an Administrative Law Judge ("ALJ") occurred on September 27, 2018. AR 41-86. On November 27, 2018, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for benefits. AR 17-40. On March 8, 2019, the Appeals Council denied Plaintiff's request for review, AR 1-6, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On May 8, 2019, Plaintiff timely filed this action challenging the denial of benefits.[2] ECF No. 1. Accordingly, his claims are properly before this Court under 42 U.S.C. § 405(g).

## II.    Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

---

[1] Plaintiff later amended his alleged onset date to April 1, 2016. AR 45, 385.

[2] Although Plaintiff filed this action more than 60 days after the Appeals Council denied his request for review, the deadline is 60 days from the date he *received* the decision, which is presumptively five days after the decision's date. *See* 20 C.F.R. § 422.210(c).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER ~ 2**

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4). Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b). If the claimant is, he or she is not entitled to disability benefits. 20 C.F.R. § 404.1571. If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not, the claim is denied and no further steps are required. Otherwise, the evaluation proceeds to step three.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If not, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. § 404.1520(e)-(f). If the claimant can perform past relevant work, he or she is not entitled to benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c).

### III.   Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). In reviewing a denial of benefits, a court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the court's role to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn

from the record support the ALJ's decision, then the court must uphold that

decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Moreover, courts "may not reverse an ALJ's decision on account of an error

that is harmless." *Id.* An error is harmless "where it is inconsequential to the

ultimate nondisability determination." *Id.* at 1115. In order to find that an ALJ's

error is harmless, a court must be able to "confidently conclude that no reasonable

ALJ, when fully crediting the testimony, could have reached a different disability

determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). The burden

of showing that an error is harmful generally falls upon the party appealing the

ALJ's decision. *Molina*, 674 F.3d at 1111.

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings

and only briefly summarized here. Plaintiff was 43 years old on the amended

alleged onset date, which the regulations define as a younger person. AR 88; *see*

20 C.F.R. § 404.1563(c). He graduated high school and at the time of the hearing

he was enrolled in college, studying toward a civil engineering degree. AR 50, 245,

716, 731. He can read, write, and communicate in English. AR 32, 243. He has

past relevant work as a vehicle maintenance chief for the military, as a tire shop

mechanic (doing oil changes and brakes), and as a tool and equipment rental clerk

1    for Home Depot. AR 32, 76-80, 234, 268-272. He served in the U.S. Marine Corps

2    from 1993 to 2013. AR 208.

3                      **V.      The ALJ's Findings**

4           The ALJ determined that Plaintiff was not under a disability within the

5    meaning of the Act at any time from April 1, 2016 (the amended alleged onset

6    date) through November 27, 2018 (the date of the ALJ's decision). AR 21, 34.

7           **At step one**, the ALJ found that Plaintiff had not engaged in substantial

8    gainful activity from the amended alleged onset date through the date of her

9    decision. AR 22.

10          **At step two**, the ALJ found Plaintiff had the following severe impairments:

11   status post traumatic brain injury, headaches, chronic obstructive pulmonary

12   disease (COPD), cervical radiculopathy, degenerative disc disease, degenerative

13   joint disease, status post rotator cuff repairs, depression, post-traumatic stress

14   disorder (PTSD), and alcohol use disorder. AR 23.

15          **At step three**, the ALJ found that Plaintiff did not have an impairment or

16   combination of impairments that met or medically equaled the severity of one of

17   the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 23-25.

18          **At step four**, the ALJ found that Plaintiff had the residual functional

19   capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), albeit with

20   some additional limitations. AR 25. With respect to Plaintiff's physical abilities,

the ALJ found that he could lift and carry 10 pounds frequently and 20 pounds occasionally. AR 25. He could stand and/or walk for about six hours in an eight-hour workday with normal breaks and also sit for about six hours in an eight-hour workday. AR 25. He could occasionally climb, balance, stoop, kneel, crouch, crawl, and reach overhead. AR 25. He could not have concentrated exposure to extreme cold, heat, wetness, respiratory irritants, or vibration. AR 25.

With respect to Plaintiff's mental abilities, the ALJ found that Plaintiff could cope with occasional, routine interaction with supervisors. AR 25. He could work in proximity to coworkers, but not as part of a team or cooperative effort. AR 25. He could have occasional, incidental contact with the general public, although interaction with the public could not be an essential element of his job. AR 25. Within these parameters, the ALJ believed that Plaintiff could meet reasonable employer expectations regarding attendance, production, and workplace behavior, and could also persist, focus, concentrate, and maintain adequate pace in two-hour increments. AR 25.

Given these physical and mental limitations, the ALJ concluded that Plaintiff was unable to perform any past relevant work. AR 32.

**At step five**, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in

significant numbers in the national economy that he could perform. AR 33. These

included the jobs of marker, housekeeper, and collator operator. AR 33.

## VI.    Issues for Review

Plaintiff argues the ALJ erred by: (1) ignoring the medical opinion of

examining physician's assistant Carol Flaugher, PA-C, (2) failing to include carpal

tunnel syndrome as one of his severe impairments at step two of the sequential

evaluation, and (3) discrediting his subjective pain complaint testimony. ECF No.

13 at 2, 8-20.

## VII.    Discussion

### A.    The ALJ Harmfully Erred by Failing to Consider the Medical Opinion of Carol Flaugher, PA-C

Plaintiff argues that the ALJ erred by failing to address or consider the

medical opinion of examining physician's assistant Carol Flaugher, PA-C. *See*

ECF No. 13 at 8-10. The Commissioner responds that under the Social Security

Administration's new regulations, other governmental agencies' disability

determinations—such as those made by the Department of Veterans Affairs—are

not considered valuable or persuasive. ECF No. 14 at 5.

### 1.    Legal principles

For claims filed after March 27, 2017—such as this one—the Social

Security Administration has amended the regulations regarding evaluation of

medical opinion evidence. *See* Revisions to Rules Regarding the Evaluation of

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO THE COMMISSIONER ~ 8**

Medical Evidence, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017). These new

regulations got rid of the traditional hierarchy between treating, examining, and

non-examining physicians, and instead direct ALJs to consider all medical

opinions and evaluate their persuasiveness using several listed factors. 20 C.F.R. §

404.1520c(a). These factors include supportability, consistency, relationship with

the claimant, specialization, and "other factors that tend to support or contradict a

medical opinion," such as familiarity with the record. 20 C.F.R. § 404.1520c(c).

The two most important factors are supportability and consistency. 20 C.F.R. §

404.1520c(a).

The new regulations still require ALJs to articulate and analyze how

persuasive they find each medical opinion. 20 C.F.R. § 404.1520c(b). Because

supportability and consistency are the most important factors, the new regulations

require ALJs to explain how they considered these factors in their decision. 20

C.F.R. § 404.1520c(b)(2). ALJs are generally not required to explain how they

considered the remaining factors, except when two or more opinions are equally

well-supported and consistent. 20 C.F.R. § 404.1520c(b)(2)-(3).

While the new regulations eliminate the traditional hierarchy between

treating, examining, and non-examining medical sources, ALJs must still provide

legally sufficient reasons supported by substantial evidence for finding a medical

opinion unpersuasive. *E.g. Mark M. M. v. Saul*, 2020 WL 2079288, at *4 (D.

Mont. 2020); *Beason v. Saul*, 2020 WL 606760, at *3 (C.D. Cal. 2020). An ALJ

errs when he or she fails to address or consider a medical opinion. *Beason*, 2020

WL 606760, at *3.

The new regulations also changed how the Commissioner considers

disability determinations from other governmental agencies, such as the

Department of Veterans Affairs. Before, ALJs were required to consider and "give

great weight to" VA disability determinations. *McCartey v. Massanari*, 298 F.3d

1072, 1076 (9th Cir. 2002); *see also McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir.

2011); *Luther v. Berryhill*, 891 F.3d 872, 876-77 (9th Cir. 2018). ALJs could only

discount VA disability ratings if they gave "persuasive, specific, valid reasons for

doing so." *McCartey*, 298 F.3d at 1076.

The new regulations got rid of this requirement. Under the new regulations,

ALJs are not required to "provide any analysis in [their] determination or decision

about a decision made by any other governmental agency or a nongovernmental

entity about whether [the claimant is] disabled, blind, employable, or entitled to

any benefits." 20 C.F.R. § 404.1504; *see Edward L. C. v. Comm'r of Soc. Sec.*,

2019 WL 6789813, at *2 (W.D. Wash. 2019) (finding no error in the ALJ's

ignoring of another agency's disability rating under the new regulations); *Kathleen

S. v. Comm'r of Soc. Sec.*, 2019 WL 4855631, at *7-8 (W.D. Wash. 2019) (same).

The new regulations explain that such evidence will not be analyzed because it "is

1    inherently neither valuable nor persuasive to the issue of whether [the claimant is]

2    disabled or blind under the Act." 20 C.F.R. § 404.1520b(c).

3        However, and importantly for this case, the new regulations still require

4    ALJs to "consider all of the supporting evidence underlying the other

5    governmental agency or nongovernmental entity's decision that [they] receive as

6    evidence." 20 C.F.R. § 404.1504. This includes medical opinions. *See* 20 C.F.R. §§

7    404.1504, 404.1513(a)(2). And in particular, this includes opinions from providers

8    who examine the claimant in connection with a separate VA disability claim.

9    *Joseph M. R. v. Comm'r of Soc. Sec.*, 2019 WL 4279027, at *7 (D. Or. 2019).

10        **2.    PA-C Flaugher's opinion**

11        In March 2018, Carol Flaugher, PA-C, conducted a "Compensation and

12    Pension Exam" of Plaintiff at the request of the VA in connection with Plaintiff's

13    VA disability claim. AR 979-988. She found that Plaintiff had abnormal ranges of

14    motion in his cervical spine and that this contributed to a loss of function. AR 981.

15    She also found evidence of muscle spasm in the cervical spine, which resulted in

16    abnormal gait or abnormal spinal contour. AR 982. Plaintiff, however, had normal

17    muscle strength in his arms, no muscle atrophy, normal reflexes, and normal

18    sensation. AR 983-84.

19        Ms. Flaugher also noted that Plaintiff had symptoms of radiculopathy in his

20    upper extremities. AR 985. She noted that this caused intermittent pain, moderate

to severe paresthesia, and mild to moderate numbness. AR 985. She believed

Plaintiff's C5/C6 and C7 nerve roots were all involved. AR 985. She also found

that Plaintiff's radiculopathy symptoms were severe on his right side and moderate

on his left. AR 985. However, she apparently contradicted these findings later in

her evaluation, noting: "There is no diagnosis of radiculopathy. The arm pain is

carpal tunnel and is not from the cervical spine but an entirely separate condition."

AR 987-88.

With respect to functional limitations, Ms. Flaugher indicated that pain,

fatigue, weakness, and lack of endurance significantly limited Plaintiff's functional

abilities and that her examination was medically consistent with Plaintiff's

descriptions of functional loss. AR 982. Specifically, she opined that Plaintiff

could look upward for only seconds, could look downward for five minutes, and

could only sit, stand, and walk for 10-15 minutes each. AR 980, 987. She also

opined that Plaintiff had limited cervical range of motion, that he had limited

ability to look left and right, and that he could only lift one gallon of milk. AR 980,

987.

Before the hearing, Plaintiff's representative submitted a brief in which she

emphasized Ms. Flaugher's Compensation and Pension Exam report. *See* AR 388

(citing AR 979). In a bulleted list, the representative outlined Ms. Flaugher's

opined limitations and argued that these supported a finding that Plaintiff was

unable to work.[3] AR 388-89.

During the hearing, Plaintiff's representative asked the vocational expert if

someone who needed to alternate sitting and standing every 30 minutes could still

perform the jobs of marker, housekeeper, and collator operator. AR 84-85. The

vocational expert testified that such a person could not. AR 85.

Despite Plaintiff's representative's briefing of and reliance on Ms.

Flaugher's evaluation, the ALJ did not acknowledge, consider, or weigh this

opinion in the decision.[4] *See* AR 30-31. The ALJ failed to consider or discuss any

of the factors listed in 20 C.F.R. § 404.1520c(c)(1)-(5), including the most

important factors of supportability and consistency, which the ALJ was required to

explain. *See* 20 C.F.R. § 404.1520c(b)(2); *Joseph M.R.*, 2019 WL 4279027, at *7-

8; *Beason*, 2020 WL 606760, at *3.

The Commissioner argues that the ALJ was not required to consider or

analyze Ms. Flaugher's medical opinion because under the new regulations ALJs

do not have to analyze other governmental agencies' disability determinations. *See*

---

[3] Plaintiff's representative mistakenly believed that this report was a questionnaire that Plaintiff himself completed, rather than a medical evaluation from Ms. Flaugher. *See* AR 388. Nevertheless, the representative emphasized its importance in her pre-hearing briefing. AR 388.

[4] In an unrelated section of the decision, the ALJ did reference the functional limitations contained in Ms. Flaugher's report. *See* AR 26. However, like Plaintiff's representative, the ALJ mistakenly believed that these restrictions were Plaintiff's self-reports, rather than findings from a medical provider. *See* AR 26.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER ~ 13**

ECF No. 14 at 5. While the ALJ did not have to analyze the VA's actual disability rating, *see* AR 196-212, the ALJ *was* required to "consider all of the supporting evidence underlying the [VA's] decision that [was] receive[d] as evidence," including Ms. Flaugher's medical opinion. *See* 20 C.F.R. §§ 404.1504, 404.1513(a)(2). Even under the new regulations, ALJs are still required to consider and analyze opinions from medical providers who examine claimants in connection with their VA disability claims. *Joseph M. R.*, 2019 WL 4279027, at *7-8 (expressly rejecting the argument the Commissioner is making here).

The Court must next determine if the error was harmful. In analyzing harmless error, the Court must assume the truth of the wrongly omitted opinion and then determine whether it can "confidently conclude that no reasonable ALJ" would have reached a different result. *Marsh*, 792 F.3d at 1173. And here, Ms. Flaugher opined that Plaintiff could only sit, stand, and walk for 10-15 minutes each, look up for a few seconds, look down for five minutes, and only lift a gallon of milk. AR 980, 987. The vocational expert testified that someone who needed to alternate sitting and standing every 30 minutes could not perform the jobs the ALJ identified at step five—marker, housekeeper, and collator operator. AR 84-85. Assuming the truth of Ms. Flaugher's opinion, it is possible that an ALJ could have reached a different result with respect to whether Plaintiff could perform these alternative jobs.

Moreover, this is not a case where there is an abundance of medical opinion evidence. Apart from Ms. Flaugher's opinion—which the ALJ overlooked—the record contains only one other medical opinion from a provider who had personally seen and physically examined Plaintiff. *See* AR 30, 730-35 (report of William Drenguis, M.D.). In light of the dearth of medical opinions regarding Plaintiff's physical abilities, Ms. Flaugher's opinion is all the more important.

For these reasons, the Court cannot "confidently conclude" that the error was harmless. *See Marsh*, 792 F.3d at 1173 (holding that the error was not harmless where the ALJ ignored a provider's medical opinion on a central issue); *Beason*, 2020 WL 606760, at *3 (error not harmless where the ALJ failed to consider or discuss any of the factors for evaluating the persuasiveness of a physician's opinion). Because the erroneously omitted opinion, if credited, could conceivably permit an ALJ to conclude that Plaintiff was unable to perform the alternative jobs of marker, housekeeper, and collator operator, remand is necessary for the ALJ to consider and analyze this opinion.

**B.     The ALJ did not Err in not Including Carpal Tunnel Syndrome as a Severe Impairment at Step Two of the Sequential Evaluation Process**

Plaintiff argues the ALJ should have included carpal tunnel syndrome as one of his severe impairments at step two. ECF No. 13 at 10-15.

At step two in the sequential evaluation process, the ALJ must determine whether a claimant has a medically severe impairment or combination of

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER ~ 15**

impairments. 20 C.F.R. § 404.1520(a)(4)(ii). The claimant has the burden of establishing that he or she has a severe impairment. 20 C.F.R. § 404.1512. To meet this burden, the claimant must provide objective medical evidence—a claimant's statements regarding his or her symptoms are insufficient, as are a claimant's reports of a diagnosis. 20 C.F.R. § 404.1521. The claimant must also provide a diagnosis from an "acceptable medical source," such as a licensed physician or psychologist. 20 C.F.R. § 404.1521. Importantly for purposes of this case, the impairment must also last or be expected to last for at least 12 months. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).

When arguing on appeal that the ALJ failed to include a severe impairment at step two, a claimant cannot simply point "to a host of diagnoses scattered throughout the medical record." *Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1207 (D. Or. 2019). Rather, to establish harmful error, a claimant must specifically identify functional limitations that the ALJ failed to consider in the sequential analysis. *Id.*; *see also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

In this case, Plaintiff was first diagnosed with carpal tunnel syndrome in March 2018 by Paulo Cancado, M.D., based on a contemporaneous electromyography (EMG) and nerve conduction study.[5] AR 869, 871-73. At the

---

[5] Plaintiff states that his "physician diagnosed carpal tunnel syndrome by clinical signs" in June 2015. ECF No. 13 at 12 (citing AR 701). This is incorrect—Dr. Ransom only stated that "[g]iven the complaints of progressive hand weakness and exam findings of mild ABP weakness,

1    time of the September 2018 hearing, Plaintiff was scheduled to undergo carpal

2    tunnel release surgery the following month. AR 58; *see also* AR 1085. Based on

3    this evidence, the ALJ concluded that Plaintiff's carpal tunnel syndrome did not

4    satisfy the 12-month durational requirement to qualify as a severe impairment. *See*

5    AR 23.

6         Plaintiff argues that he had been complaining about problems with his hands

7    since June 2015. ECF No. 13 at 11-12 (citing AR 530, 699, 846, 851). This is

8    true—and due to these complaints, in March 2016 Plaintiff's neurosurgeon referred

9    him for an EMG and nerve conduction study to "rule out carpal tunnel syndrome

10   and ulnar neuropathy." AR 846; *see also* AR 851. However, when Dr. Marjorie

11   Henderson conducted the studies in July 2016, she opined that they were consistent

12   with cervical radiculopathy but "negative for ulnar neuropathy or diagnostic carpal

13   tunnel findings." AR 23; *see* AR 848. In light of these test results, the ALJ

14   concluded that Plaintiff had not established the existence of carpal tunnel

15   syndrome until March 2018, when he was diagnosed by Dr. Cancado. *See* AR 23.

16   Substantial evidence therefore supports the ALJ's determination that this condition

17   did not satisfy the 12-month durational requirement to qualify as a severe

18   impairment.

19

20

---

evaluation for CTS [was] indicated." AR 701. Dr. Random never diagnosed Plaintiff with carpal tunnel syndrome in June 2015. *See* AR 699-702.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER ~ 17**

1     Moreover, even if the ALJ should have included carpal tunnel as a severe

2  impairment (which has not been established), Plaintiff fails to identify any

3  functional limitations put forth by a medical provider (and not his own testimony)

4  arising from this condition, and therefore fails to demonstrate harmful error. *Cindy*

5  *F.*, 367 F. Supp. 3d at 1207.

6     However, because remand is necessary for the ALJ to consider Ms.

7  Flaugher's medical opinion, Plaintiff should have the opportunity to submit

8  evidence relating to his October 2018 carpal tunnel release. If new medical

9  evidence demonstrates that this condition resulted in functional limitations that

10  continued beyond the October 2018 surgery, the ALJ shall reevaluate whether it

11  should be included as one of Plaintiff's severe impairments at step two of the

12  sequential evaluation process.

13  **C.    On Remand, the ALJ Shall Reevaluate the Credibility of Plaintiff's Subjective Pain Complaints**

14

15     Plaintiff argues the ALJ erred by discounting the credibility of his testimony

16  regarding his subjective symptoms. ECF No. 13 at 15-20. One of the ALJ's main

17  rationales for discounting Plaintiff's pain complaints was that "[t]he medical

18  evidence [did] not substantiate [his] allegations of disabling symptoms or

19  limitations." AR 26. However, the ALJ failed to consider and weigh Ms.

20  Flaugher's opinion. Because her opinion may affect the analysis with respect to

whether Plaintiff's symptom complaints were fully credible, upon remand, the ALJ

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING TO THE COMMISSIONER ~ 18**

shall reevaluate Plaintiff's credibility after having considered Ms. Flaugher's

medical opinion.

## VIII.  Order

Having reviewed the record, the ALJ's findings, and the parties' briefing,

the Court finds the ALJ's decision is not supported by substantial evidence and

contains legal error. Accordingly, **IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

2.    Defendant's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3.    The Commissioner's decision to deny Plaintiff's application for Social

Security benefits is **REVERSED** and **REMANDED** to the Commissioner

for further proceedings consistent with this Order, pursuant to sentence four

of 42 U.S.C. § 405(g).

4.    Judgment shall be entered in favor of Plaintiff and against Defendant and the

file shall be **closed**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this

Order, forward copies to counsel, and close the file.

**DATED** this June 30, 2020.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING TO THE COMMISSIONER** ~ 19